T.C. Memo. 1997-505


UNITED STATES TAX COURT


RICHARD L. BENNETT, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19775-96.          Filed November 10, 1997.


P contributed 236 films to a charitable
organization.  In accord with an appraisal, P placed a
$236,000 value on the films.  R, in the process of
examining P's contributions, had X, an in-house
engineer, to value the films.  X opined that the films
had no (zero) value.  R then hired Y, an outside
"independent" expert, to value the films.  Finally, R
had Z, another in-house engineer, to value the films.
Z opined that 118 of the 236 films were damaged and
were of no value.  Z also opined that P had correctly
valued at $1,000 per film those of the films that were
not damaged.  R's notice of deficiency to P was based
on Z's valuation.  P obtained the valuation reports
(reports) of the in-house engineers (X and Z), but Y's
report was not provided to P.

In the context of pretrial discovery P sought a
copy of Y's report.  R refused to turn over the report
on the grounds that P was seeking to go behind the
notice of deficiency, citing <u>Greenberg's Express, Inc.
v. Commissioner</u>, 62 T.C. 324 (1974).  P did not raise
in any pleading or motion the issue of whether the
notice of deficiency was arbitrary or capricious.  R,

also relying on Fed. R. Civ. P. 26(b)(4)(B), argues
that expert reports should not be discoverable under
this Court's Rules of Practice and Procedure.
    Held:  In the context of this case, P is not
seeking to "go behind the notice of deficiency" and is
entitled to discover and obtain a copy of Y's report.

James W. Childs and Roxann T. Conrad, for petitioner.

Carol A. Szczepanik and Dennis G. Driscoll, for respondent.


MEMORANDUM OPINION

GERBER, Judge:  We must decide:  (1) Whether, in a pretrial discovery setting, it was appropriate for respondent to refuse to produce a document on the ground that petitioner is not entitled to go behind the notice of deficiency determination, and (2) whether petitioner is entitled to discover a pre-deficiency-notice report of respondent's expert who will not be called as a witness.

Background

Petitioner moved to compel production of an independent expert's report obtained by respondent during the examination process.  On his 1990 and 1991 Federal income tax returns, petitioner claimed deductions in the amounts of $76,000 and $160,000, respectively, for the donation of 236 films to the Institute for the Advanced Study of Human Sexuality of the Exodus Trust, a charitable organization.  Seventy-six films were donated in 1990 and 160 films in 1991.  The films are 8-millimeter, silent, black and white films which contain erotic material

produced in the United States and Europe between 1925 and 1950. Petitioner obtained a $236,000 appraisal valuing each of the 236 films at $1,000. Petitioner claimed charitable contribution deductions in the amounts of $74,667 and $66,513 for 1990 and 1991, respectively, and claimed a carryover charitable deduction of $97,641 to 1992.

During the examination of petitioner's 1991 and 1992 income tax returns, and before issuance of the notice of deficiency, respondent utilized an in-house valuation engineer (first engineer), who contacted petitioner's appraiser regarding the method of valuation used in determining the $236,000 value. According to the first engineer's report, petitioner's appraiser determined the films' value using a comparable sales method. Petitioner's appraiser apparently would not reveal the comparable films to respondent's first engineer because the "sales * * * would be illegal, since the films in question were pornographic, and cannot be sold in the market place." The first engineer recommended a zero value for the 236 films donated by petitioner. Petitioner received a copy of the first engineer's report pursuant to a Freedom of Information Act (FOIA) request by petitioner's accountant. It is not apparent when petitioner received the first engineer's report.

Next, respondent hired an outside independent expert (independent expert), who valued the films in question and

provided respondent with a report (expert report).  That expert report is the subject of petitioner's motion to compel. Petitioner was not informed of the contents or given a copy of respondent's independent expert report.

Respondent then had another in-house valuation engineer (second engineer) to value the films.  The second engineer provided an Engineering and Valuation Report (in-house report) on the donated films.  The second engineer, after physical inspection of the films, found that approximately 50 percent of the films had deteriorated due to oxidation of the celluloid. According to the second engineer, the cost to return the damaged films to usable condition would be at least $2,000 per film. Given petitioner's claimed $1,000-per-film value, the second engineer concluded that repair of the damaged films would not be economically feasible and, thus, the damaged films had no value. The second engineer recommended that respondent disallow the value that petitioner assigned to the damaged films, and therefore that petitioner's claimed $236,000 contribution deduction be reduced by 50 percent to $118,000.  The in-house report also contained the opinion that a $1,000 value was an acceptable fair market value for the films that were in good physical condition.  The second engineer's in-house report was provided to petitioner.

In the notice of deficiency, respondent, apparently relying on the second engineer, determined that petitioner was entitled to claim a total of $118,000 as charitable deductions in 1991 and 1992 for the contribution of the 236 donated films. On the basis of that determination, respondent disallowed the other half of the claimed deductions in the amount of $118,000, resulting in deficiencies for petitioner's 1990 and 1991 taxable years. Thereafter, petitioner, who at the time resided in Akron, Ohio, filed a petition with this Court.

In a letter to respondent's counsel dated April 21, 1997, petitioner requested documents relating to the appraisal of the donated films. Respondent refused to turn over the expert report and objected to production. On June 2, 1997, petitioner filed a motion to compel production of documents relating to the appraisal of the donated films. Also, on June 2, 1997, respondent filed a motion for leave to file amendment to answer to petition asserting as a new matter that petitioner did not own the donated films and was not entitled to any charitable deductions with regard to the films. This case had been scheduled for trial in Cleveland, Ohio, on June 2, 1997, and was continued, and respondent's motion to amend the answer remains outstanding.

Petitioner also filed a FOIA request with the Internal Revenue Service seeking a copy of the expert report. Petitioner

argues that he would be entitled to the independent expert report under FOIA and that pursuing his motion to compel here causes a delay in the FOIA matter. The FOIA matter, however, is separate from this proceeding and outside this Court's jurisdiction and therefore has no effect on discovery issues before this Court. Davis v. Commissioner, 65 T.C. 1014, 1024 (1976); Maple v. Commissioner, T.C. Memo. 1990-567.

Respondent, in addition to other grounds, contends that petitioner's motion to compel production of documents is untimely under Rule 70(a)(2).[1] Rule 70(a)(2) requires discovery to be completed, unless otherwise authorized by the Court, no later than 45 days prior to the date set for call of the case from a trial calendar. Respondent argues that the case was calendared for trial on June 2, 1997, and that discovery had to be completed 45 days prior to that date, April 18, 1997. Accordingly, respondent maintains that petitioner's request for documents on April 21, 1997, was not timely. By order of this Court, this case was stricken from the June 2, 1997, calendar. Petitioner subsequently filed the motion to compel production of documents at issue here. Accordingly and due to the continuance of the trial in this case, it is now irrelevant that petitioner's

---

[1] All Rule references are to the Tax Court's Rules of Practice and Procedure, and all section references are to the Internal Revenue Code in effect for the period under consideration, unless otherwise indicated.

discovery request may have been served late, and respondent's timeliness concerns are moot.

Petitioner requested production of appraisal documents with reasonable particularity in accordance with Rule 72, and respondent objected to production. Thereafter, petitioner properly filed the motion to compel production of documents pursuant to Rule 72. Petitioner asks for production of respondent's expert report obtained prior to the issuance of the deficiency notice. Respondent contends that the expert report was not used in the deficiency determination. Additionally, respondent points out that the second engineer's report, which was used as the basis for the deficiency determination, was made available to petitioner. Respondent also notes that the independent expert will not be called by respondent as an expert witness at any trial.

Petitioner's discovery request for the expert report did not contain any delineation of a specific purpose for the request or intended use of the document. Following his motion to compel production of the expert report, petitioner was informed by respondent that he was not entitled to discovery of the requested expert report because such discovery would permit petitioner to go behind the notice of deficiency in violation of the principles expressed in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974). To counter respondent's contentions, petitioner

filed a Supplemental Memorandum of Law posing a two-part position to counteract respondent's "going behind the notice" defense to discovery. In particular, petitioner raised a First Amendment constitutional claim that respondent's disallowance of the charitable contribution was based on a moral judgment due to the pornographic nature of the films, and that there has been a violation of his right to freedom of speech. In that same vein, petitioner argued that respondent's determination was arbitrary and capricious and that he was entitled to discovery of the expert report to evaluate whether respondent's disallowance was based on unconstitutional grounds.

As a general rule, this Court will not look behind a deficiency notice to examine the evidence used by the Commissioner in making the determination or respondent's motives, administrative policy, or procedures. Id. at 327. The rationale for this rule is that a trial before the Tax Court is a de novo proceeding, and our decision is based on the merits of the record before us and not on the merits of the administrative record. Jackson v. Commissioner, 73 T.C. 394, 400 (1979); Greenberg's Express, Inc. v. Commissioner, supra at 328. We recognize an exception to this rule when there is substantial evidence of unconstitutional conduct by respondent. Suarez v. Commissioner, 58 T.C. 792, 813 (1972).

It is unnecessary, however, to decide whether an exception to the principle of <u>Greenberg's Express, Inc. v. Commissioner</u>, <u>supra</u>, applies in this case.  In response to petitioner's discovery request, respondent interposed the principle of <u>Greenberg's Express</u> and contended that petitioner was attempting to go behind the deficiency notice.  Petitioner was seeking to obtain information about the valuation of the subject films. <u>Greenberg's Express</u> and its principle are directed to the question of what issues are justiciable before the Court.  So, for example, it would generally make no difference to the Court what the position of the Commissioner's agent was on a particular issue, even if that view was different from the one set forth in the notice of deficiency.  That is so because the Commissioner's determination is set forth in the notice, and a trial de novo is provided to decide whether that determination is in error.  The question of whether petitioner is entitled to respondent's expert report is one, in this setting, to be judged on the basis of discovery rules of this Court and not on the question of the admissibility of the expert report.  We note that the pleadings do not raise an issue of whether the notice issued to petitioner is arbitrary or capricious.

The standards governing discovery of documents are set out in Rule 70.  Rule 70(b) provides that "The information or response sought through discovery may concern any matter not

privileged and which is relevant to the subject matter involved in the pending case."  Information that would be inadmissible at trial is discoverable if the information appears reasonably calculated to lead to the discovery of admissible evidence.  Rule 70(b).  The party objecting to discovery has the burden of establishing that the documents sought by the other party are not relevant or that they are otherwise not discoverable.  Rosenfeld v. Commissioner, 82 T.C. 105, 112 (1984); Rutter v. Commissioner, 81 T.C. 937, 948 (1983); Branerton Corp. v. Commissioner, 64 T.C. 191, 193 (1975).  Accordingly, respondent bears the burden of showing that the expert report sought by petitioner is not discoverable.

Respondent attempts to carry that burden by contending that petitioner is not entitled to obtain discovery to show whether the notice is arbitrary or capricious.  We have relied on the rule in Greenberg's Express, Inc. v. Commissioner, supra, to deny motions to compel discovery of documents from the administrative stage of the case when the taxpayers have argued that the Commissioner's deficiency determinations are arbitrary and capricious or sought to challenge the Commissioner's motives or procedures in making the deficiency determination.  See, e.g., Healey v. Commissioner, T.C. Memo. 1996-260; Wooten v. Commissioner, T.C. Memo. 1993-241; Karlin v. Commissioner, T.C. Memo. 1990-496; Ramsey v. Commissioner, T.C. Memo. 1986-252.  In

denying the taxpayers' discovery requests in the above-cited instances, we reasoned that, because we will not look behind the notice of deficiency to examine the evidence or procedures used by the Commissioner in making the deficiency determination or the Commissioner's motives for the determination, the documents were not relevant or would not lead to relevant evidence.  Those holdings are based on the fact that the taxpayers in those cases had placed in issue the question of whether the notices in those cases were arbitrary or capricious.

The question of whether the deficiency notice is arbitrary or capricious was not placed in issue in this case.  Petitioner made no allegation other than that respondent's valuation of the donated films was in error.  The principle of Greenberg's Express is appropriate when taxpayers improperly seek to go behind the deficiency notice.  Due to our holding on this point, it is unnecessary to consider whether petitioner's constitutional claim is an exception to the Greenberg's Express general rule.  A request for production of an expert report obtained by the Commissioner in the pre-deficiency-notice examination of a taxpayer's return is not per se an attempt to go behind the notice or a challenge to the basis for a deficiency determination.  The rule that we will not look behind the notice of deficiency does not alone preclude discovery of pre-deficiency-notice matter.  Respondent's use of the general rule

in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974), to deny petitioner access to a document that was created prior to the issuance of the notice of deficiency is not an appropriate defense to discovery in this case.

The expert report is relevant to the subject matter of this case and appears reasonably calculated to lead to admissible evidence, which is the threshold requirement of Rule 70(b). The only issue presented in this case concerns the fair market value of the donated films. The expert report appears to relate to the value of the films and is relevant. Although petitioner may not be able to offer respondent's expert report into evidence and it may be inadmissible for other reasons, that aspect does not preclude discovery of the expert report under Rule 70(b) as long as the expert report appears reasonably calculated to lead to the discovery of admissible evidence. Hickman v. Taylor, 329 U.S. 495, 501 (1947); see also United States v. Procter & Gamble Co., 356 U.S. 677, 682-683 (1958); Zaentz v. Commissioner, 73 T.C. 469, 478 (1979).

Respondent also argues that the expert report is not discoverable under rule 26(b)(4)(B) of the Federal Rules of Civil Procedure (hereafter rule 26(b)(4)(B), which limits discovery relating to opinions of experts not expected to be called to testify at trial. Rule 26(b)(4)(B), generally prohibits the discovery of experts retained or specifically employed by the

opposing party in anticipation of litigation or preparation for trial. Under that rule a party may discover opinions of such nontestifying experts only upon "a showing of exceptional circumstances under which it is impractical for the party seeking discovery to obtain facts or opinions on the same subject by other means."

Our Rules of Practice and Procedure do not contain a similar limitation on the discovery of a nontestifying expert witness' report. Respondent contends that this Court should adopt a discovery rule similar to rule 26(b)(4)(B) to protect from discovery the opinions and reports of experts not testifying at trial. Respondent argues that petitioner's discovery of the expert report will unjustifiably further petitioner's trial preparation at the Government's expense and will be inconsistent with the doctrine of fairness upon which rule 26(b)(4)(B) is based.

Rule 71(d)(1) provides for discovery relating to experts who are to be called as witnesses at trial and requires that a party intending to call such an expert answer interrogatories about the expert or produce an expert report. Rule 71(d)(1) provides:

> By means of written interrogatories in conformity with this Rule, a party may require any other party (A) to identify each person whom the other party expects to call as an expert witness at the trial of the case, giving the witness' name, address, vocation or occupation, and a statement of the witness' qualifications, and (B) to state the subject matter and the substance of the facts and opinions to which the

expert is expected to testify, and give a summary of the grounds for each such opinion, or, in lieu of such statement to furnish a copy of a report of such expert presenting the foregoing information.

Notes of the Rules Committee to Rule 71(d) state that the complex discovery provisions relating to experts in rule 26(b)(4)(B) are inappropriate for purposes of litigation in this Court. 60 T.C. 1101. We are asked by respondent to consider whether to adopt, in particular, rule 26(b)(4)(B) as part of Tax Court procedure.

Respondent maintains that the rules of evidence in the Federal Rules of Civil Procedure are applicable to Tax Court proceedings pursuant to Rule 143. Rule 143 governs the question of admissibility of evidence at trial. The Notes of the Advisory Committee on the 1970 amendments of the Federal Rules of Civil Procedure contain the explanation that rule 26(b)(4)(B) was promulgated to

repudiate the few decisions that have held an expert's information privileged simply because of his status as an expert, e.g., American Oil Co. v. Pennsylvania Petroleum Products Co., 23 F.R.D. 680, 685-686 (D.R.I. 1959). * * * They also reject as ill-considered the decisions which have sought to bring expert information within the work-product doctrine. See United States v. McKay, 372 F.2d 174, 176-177 (5th Cir. 1967). * * * [28 U.S.C. app. at 705 (1994).]

Rule 26 of the Federal Rules of Civil Procedure has not been specifically adopted by this Court. In that regard, under Rule 143(a), trials before this Court are conducted in accord with the rules of evidence applicable to trials without a jury before the U.S. District Court for the District of Columbia. See sec. 7453.

Following that mandate we are bound by rules of evidence contained in the Federal Rules of Civil Procedure, but we are not compelled to follow procedural rules contained in the Federal Rules of Civil Procedure. McKenzie v. Commissioner, 59 T.C. 139, 142-144 (1972), affd. without published opinion 486 F.2d 1401 (5th Cir. 1973). Rule 1(a), however, provides that where there is no applicable rule of procedure, the Court may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure. See Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1001 (1978).

If we were to follow the FRCP for guidance in this matter, the critical question that would have to be answered is whether the expert report in question was obtained by respondent in anticipation of litigation or preparation for trial. Rule 26(b)(4)(B) limits discovery, except in unusual circumstances, of expert opinions obtained solely in anticipation of litigation or in preparation for trial. Respondent contends that the expert report was prepared in anticipation of litigation. The expert report was obtained by respondent's agent during the examination of petitioner's tax returns and prior to the issuance of the notice of deficiency. Respondent has not shown that his lawyer was involved in the administrative process when the independent expert was hired; that the expert report was prepared at the direction of an attorney; or that the expert report was in any

way prepared in anticipation of litigation.  In a similar vein, we have held that revenue agents' reports and appellate conferees' reports are not prepared in anticipation of litigation.  Branerton Corp. v. Commissioner, 64 T.C. at 196-199; P.T.& L. Constr. Co. v. Commissioner, 63 T.C. 404, 408 (1974).

The question of whether the expert report here was prepared in anticipation of litigation is a concept that is regularly dealt with in connection with the work product doctrine.  See Hickman v. Taylor, 329 U.S. at 510-511.  In Bernardo v. Commissioner, 104 T.C. 677, 687 (1995), we explained the concept of anticipation of litigation as follows:

> Litigation is frequently anticipated prior to the time a lawsuit is actually commenced.  To show that a document was prepared in anticipation of litigation "A litigant must demonstrate that the documents were created 'with a specific claim supported by concrete facts which would likely lead to [the] litigation in mind,' not merely assembled in the ordinary course of business or for other nonlitigation purposes."  Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp., 5 F.3d [1508] at 1515 (quoting Coastal States Gas Corp. v. Department of Energy, 617 F.2d 854, 865 (D.C. Cir. 1980)).

Respondent, contrary to the position he argues here, has argued that materials accumulated prior to the issuance of the notice of deficiency are not in anticipation of litigation.  See Id. at 688.  Generally, respondent's view has been accepted; however, in the Bernardo case we found that once the taxpayers were aware that the Commissioner disagreed with the value of their charitable contribution, "it was reasonable for * * * the

[taxpayers] to anticipate litigation concerning those deductions." Id. From that premise we held that the documents in question in Bernardo were prepared in anticipation of litigation and protected by the work product doctrine.

By way of analogy, in cases where grand jury information was being used by the Government in connection with a related civil matter, it was required, among other things, that the disclosure of grand jury information be "preliminarily to or in connection with a judicial proceeding". Fed. R. Crim. P. 6(e)(3)(C)(i). That concept is substantially similar to "anticipation of litigation". We consider the following Supreme Court explanation of "preliminarily to or in connection with a judicial proceeding" as helpful to our analysis here:

> the Rule contemplates only uses related fairly directly to some identifiable litigation, pending or anticipated. Thus, it is not enough to show that some litigation may emerge from the matter in which the material is to be used, or even that litigation is factually likely to emerge. * * *
> It follows that disclosure is not appropriate for use in an IRS audit or civil tax liability, because the purpose of the audit is not to prepare for or conduct litigation, but to assess the amount of tax liability through administrative channels. * * * [United States v. Baggot, 463 U.S. 476, 480 (1983); fn. ref. omitted.]

See also Kluger v. Commissioner, 83 T.C. 309, 326-327 (1984).

We accept the general concept that, normally, the audit or examination process is not conducted in anticipation of litigation. If a particular matter has been singled out for litigation and Government lawyers become involved to begin

formulating trial strategy, then it is possible that some part of the audit or examination process may be in anticipation of litigation, and documents prepared may also be protected under the work product doctrine.

In the case before us, neither party appears to have anticipated litigation before the issuance of the notice of deficiency. In particular, respondent's first engineer, after inability to obtain information from petitioner's expert, reached a zero value. Respondent, however, was not content with that result and obtained the expert report of an outside expert. In that connection, the report of the first engineer came into petitioner's possession, but there is no indication in the information provided by the parties whether it was received by petitioner before or after the issuance of the notice of deficiency. The outside expert's report was not provided to petitioner and, for reasons which are not apparent, respondent obtained the assistance of the second engineer, whose report was provided to petitioner.

Accordingly, there has been no adequate showing that respondent and/or petitioner anticipated litigation at the time the independent expert's assistance was sought and used and his expert report issued to respondent. In other words, no controversy had been formulated between the parties until, at very least, the second engineer's report was provided to

petitioner.  Also there is no indication that respondent's lawyers were involved in the administrative process at the time the independent expert was hired and/or the time the independent expert issued the expert report.  Under those circumstances, we are unable to find that the expert report was prepared in anticipation of litigation or at the direction of respondent's legal representative.  Therefore, the expert report would not be protected under the work product doctrine.

Accordingly, the outcome of this discovery dispute would be the same if we followed rule 26(b)(4)(B) or our usual discovery standards under the work product doctrine.  That is so because the expert report in question did not meet the anticipation of litigation or in preparation for trial requirement of rule 26(b)(4)(B) or the work product doctrine.  Because rule 26(b)(4)(B) is not a rule of evidence and because it would not change the outcome of this case, there is no need to decide whether this Court should adopt, as argued by respondent, those principles into this Court's Rules of Practice and Procedure.

Respondent has not established that the expert report is in any way privileged.  Nor has respondent argued that the expert report is irrelevant and/or that the expert report is not reasonably calculated to lead to the discovery of admissible evidence.  Accordingly, petitioner's motion to compel production of the expert report will be granted.

An appropriate order
will be issued.