GREENBERG'S EXPRESS, INC., ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4006–72, 4036–72, 4038–72, 4055–72, 4220–72, 4245–72, 4269–72, 4286–72, 5538–72. Filed June 18, 1974.

---

[1] Cases of the following petitioners are consolidated herewith for the purposes of the instant motion: Debbie Miss, Inc., docket No. 4036–72; Amy Deb Fashions, Inc., docket No. 4038–72; Dynamic Delivery Corp., docket No. 4055–72; Hyman and Frieda Ruff, docket No. 4220–72; Vincent and Pauline Siracusano, docket No. 4245–72; Thomas and Frances Gambino, docket No. 4269–72; Joseph and Arlene Gambino, docket No. 4286–72; Alfred and Myra Rosengarten, docket No. 5538–72.

*Morton A. Smith* and *Samuel J. Friedman*, for the petitioners.
*Steedly Young*, for the respondent.

OPINION

TANNENWALD, *Judge:* These cases are before us on petitioners' motion for a protective order under Rule 103 (a) (10), Tax Court Rules of Practice and Procedure. We deny the motion for the reasons stated below and append some additional comments which we hope will facilitate the further proceedings in these cases.

The substantive gravamen of petitioners' complaint is that the deficiency notices involved herein stem from second examinations of the books and records of the corporate petitioners under section 7605;[2] that such second examinations, although ultimately made in compliance with the formal requirements of section 7605(b), were not instituted or conducted in good faith and for a legitimate purpose; and that such second examinations and the deficiency notices which issued as a result thereof were based upon discriminatory selection of petitioners because two of their number are the sons of one Carlo Gambino, a purported target of a governmental investigation into organized crime. In support of this claim, petitioners allege that the revenue agent in charge of the second examinations, and a member of the Strike Force, stated, "Your trouble is that 'The Godfather' got so much publicity, everybody was breathing down everybody's neck and we were told that we had to do something to take the heat off, so we went out to get a Gambino." Petitioners further allege that the deficiency determinations in themselves were arbitrary, unreasonable, and capricious because of respondent's failure to follow his established audit procedures and, in the case of certain of the corporate petitioners, his blanket disallowance of claimed business expense deductions and/or increases of round dollar amounts of taxable income.

On the basis of the foregoing, petitioners seek an order directing respondent to produce and deliver into the custody of the Court, and thereby make available for inspection by the petitioners prior to trial, all documents (whether in the custody of the Commissioner of Internal Revenue, the Secretary of the Treasury, the Attorney General of the United States, or any of their agents or designees) relating to the audit of petitioners' Federal income tax returns for 1966 through 1968 and any investigation of petitioners Thomas

---

[2] All references are to the Internal Revenue Code of 1954, as amended and in effect during the times pertinent herein.

Gambino and Joseph Gambino by the Department of Justice, the Internal Revenue Service, or the Federal Strike Force Against Organized Crime operating in New York City. Petitioners assert that such an order is necessary to prevent the possible destruction or concealment of the documents involved and to enable the petitioners to prove, by such documents, the allegations of their amended petitions that respondent's determination of deficiencies in each of their Federal income tax liabilities for 1968 arose from official actions violating their constitutional rights.

Petitioners also ask us, in the event that their allegations are established, to declare respondent's determinations null and void and therefore decide that there is no deficiency due from any of them for 1968; alternatively, petitioners ask that we shift to respondent the burden of proof or the burden of going forward with the evidence.

In terms of petitioners' primary request herein—to wit, an impounding order under Rule 103(a)(10)—we are satisfied that they are not entitled to such relief. Initially, we note that Rule 103(a) contains the following prefatory language to the specification of the types of protective orders which the Court will consider issuing: "for good cause shown, the Court may make any order which justice requires to protect a party or other person from annoyance, embarrassment, oppression, or undue burden or expense." [3] We are unable to find that petitioners have made the necessary showing to justify the issuance of the requested order. Petitioners make the bare allegation that the Government officials who possess the documents they seek may be tempted to destroy or conceal them in order to cover up the alleged scheme of harassment directed against them. Petitioners, however, do nothing more than suggest the *possibility* of destruction or concealment of potential evidence. We are not prepared as a court to presume, on the strength of such mere speculation, that Government officials will in fact destroy or conceal potential evidence in pending litigation. The custodians of the documents which petitioners seek are already, by virtue of their offices, obligated to preserve any evidence which they know may be relevant to these cases and we, therefore, consider it unnecessary, at least at this point, to use our procedures in an attempt to assure compliance with their obligations. Cf. *Harris* v. *Sunset Oil Co.*, 2 F.R.D. 93 (W.D. Wash. 1941).

Moreover, we note that impoundment is not customarily used to compel the production of documents before a court. Rather, it provides a means for retaining such documents in the court's custody after they have been properly produced by other means, such as pretrial dis-

---

[3] Rule 103(a)(10) permits the issuance of an order, "That documents or records be impounded by the Court to insure their availability for purposes of review by the parties prior to trial and use at the trial."

covery, subpoenas duces tecum, or voluntarily by a party or witness to the litigation. *United States* v. *Birrell*, 242 F. Supp. 191, 202–203 (S.D.N.Y. 1965). We will not exercise our power of impoundment as a means of providing petitioners with a device for obtaining access to documents which they might be able to obtain by some other available procedures for the production of documents. Cf. Rules 72 (production of documents) and 147 (subpoena duces tecum), Tax Court Rules of Practice and Procedure. Such procedures are to be "preferred to a reflexive motion for a protective order." See *John W. Pearsall*, 62 T.C. 94 (1974). Of course, these procedures are subject to the usual limitations on the scope of discovery, including resolution of the question (which we do not now decide) as to whether, under Rule 72, a notice to produce served upon respondent should be limited to documents or things directly "in the possession, custody or control" of the Commissioner of Internal Revenue or may properly be extended so as to require respondent to produce documents or things "in the possession, custody or control" of other departments and agencies of the United States Government. Cf. *Kazuko S. Marsh*, 62 T.C. 256 (1974). Finally, to the extent that such procedures may properly be utilized, they demand that petitioners give careful attention to developing a more precise description of the materials which they may seek; the blanket coverage of the motion herein is clearly beyond any reasonable bounds.[4] Cf. *United States* v. *Roundtree*, 420 F. 2d 845, 851–852 (C.A. 5, 1969); *United States* v. *National Steel Corporation*, 26 F.R.D. 607 (S.D. Tex. 1960).

We come now to what we consider the crux of the matter before us: if petitioners were able to establish their allegations of discrimination in their selection as objects of an otherwise legitimate tax audit, would they be entitled to the benefit of any of the requested forms of relief? If not, such allegations would be immaterial to the resolution of the instant cases and petitioners would, therefore, not be warranted in their attempts to compel the production of any documents sought to establish those allegations. Cf. *William O'Dwyer*, 28 T.C. 698, 702–704 (1957), affd. 266 F. 2d 575, 581 (C.A. 4, 1959).

As a general rule, this Court will not look behind a deficiency notice to examine the evidence used or the propriety of respondent's motives or of the administrative policy or procedure involved in making his determinations. *Human Engineering Institute*, 61 T.C. 61, 66 (1973), on appeal (C.A. 6, Jan. 2, 1974); *Efrain T. Suarez*, 58 T.C. 792, 813 (1972). Thus, we will not look into respondent's alleged failure to issue a 30-day letter to the petitioners or to afford them a conference

---

[4] We also note that, since only the taxable year 1968 is involved in the docketed cases with respect to which the motions herein have been made, it is at least open to question whether petitioners may reach documents, etc., pertaining to other taxable years.

before the Appellate Division. *Cleveland Trust Co.* v. *United States*, 421 F. 2d 475, 480-482 (C.A. 6, 1970) ; *Luhring* v. *Glotzbach*, 304 F. 2d 560 (C.A. 4, 1962) ; *Crowther* v. *Commissioner*, 269 F. 2d 292, 293 (C.A. 9, 1959), affirming 28 T.C. 1293 (1957). The underlying rationale for the foregoing is the fact that a trial before the Tax Court is a proceeding de novo; our determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level. *William O'Dwyer, supra.*

This Court has on occasion recognized an exception to the rule of not looking behind the deficiency notice when there is substantial evidence of unconstitutional conduct on respondent's part and the integrity of our judicial process would be impugned if we were to let respondent benefit from such conduct. *Efrain T. Suarez, supra.* But even in such limited situations, we have refused to declare the deficiency notice null and void, as petitioners would have us do. See *Efrain T. Suarez*, 58 T.C. at 814. See also *Marx* v. *Commissioner*, 179 F. 2d 938, 942 (C.A. 1, 1950), affirming a Memorandum Opinion of this Court dated Jan. 24, 1949.

In the area of the criminal law, "mere selectivity in prosecution creates no constitutional problem." See *United States* v. *Steele*, 461 F. 2d 1148, 1151 (C.A. 9, 1972). On the other hand, "While the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' " (Citations omitted.) See *Shapiro* v. *Thompson*, 394 U.S. 618, 642 (1969). Even the conscious exercise of some selectivity is not in and of itself a Federal constitutional violation. See *Oyler* v. *Boles*, 368 U.S. 448, 456 (1962). Within these boundaries, the Federal courts have developed the test that before the complainant is entitled to relief, it must appear that the law has been "applied and administered by public authority with an evil eye and an unequal hand" (see *Yick Wo* v. *Hopkins*, 118 U.S. 356, 373-374 (1886)), or with "questionable emphasis" (see *United States* v. *Steele*, 461 F. 2d at 1152), through the use of an unjustifiable criterion such as race, religion, or expression of unpopular views. See also *Two Guys* v. *McGinley*, 366 U.S. 582, 588 (1961) ; *United States* v. *Falk*, 479 F. 2d 616 (C.A. 7, 1973).

Assuming without deciding that a similar standard should be applied to civil tax litigation (cf. *Hugo Romanelli*, 54 T.C. 1448 (1970), reversed in part 466 F. 2d 872 (C.A. 7, 1972), and *John Harper*, 54 T.C. 1121 (1970)), it is conceivable that there may be situations where a taxpayer should be accorded some relief, if he were able to prove that he was selected for audit on a clearly unjustifiable criterion. But we think that such situations will be extremely rare and we are satisfied that petitioners' allegations, even if true, would not be sufficient. Peti-

tioners do not deny—indeed, they assume for the purposes of their motions—that the audits involved herein stemmed from the Government's attempts to deal with organized crime. Nor do they at any point assert that the deficiency notices are without foundation, i.e., that they owe no tax. Cf. *Enochs* v. *Williams Packing Co.*, 370 U.S. 1, 7 (1962) ; *Miller* v. *Nut Margarine Co.*, 284 U.S. 498, 510 (1932). Compare *Bob Jones University* v. *Simon*, 416 U.S. 725 (1974).

What is more, petitioners are not faced with prejudicial action by a Government agency which will, absent protective intervention by this Court, result in a final determination of petitioners' tax liabilities or in the establishment of facts which will be deemed undisputed and inexorably lead to the imposition of such liabilities. Cf. *Shapiro* v. *Thompson, supra; United States* v. *Falk, supra; United States* v. *Steele, supra*. Indeed, their right to a trial de novo in this Court is the critical factor which distinguishes practically all of the cases relied upon by petitioners. Compare *Bob Jones University* v. *Simon, supra; Robida* v. *Commissioner*, 371 F. 2d 518 (C.A. 9, 1967) ; *Boyd* v. *United States*, 345 F. Supp. 790 (E.D.N.Y. 1972). In this connection, we note that petitioners make no claim that they are presently or may be subjected to criminal prosecution as a consequence of respondent's actions. Compare *Hinchcliff* v. *Clarke*, 371 F. 2d 697 (C.A. 6, 1967) ; see also *Donaldson* v. *United States*, 400 U.S. 517, 532–533 (1971).

The broad sweep of the power to enforce revenue laws has repeatedly been recognized. E.g., *Donaldson* v. *United States*, 400 U.S. at 534–536; *United States* v. *Roundtree*, 420 F. 2d at 850–851; *Human Engineering Institute, supra*. When this power is evaluated against the commonly recognized pervasive influence of organized crime in this country, we cannot say that petitioners' allegations create an unjustifiable criterion. See S. Rept. No. 1097, 90th Cong., 2d Sess. (1968), 2 U.S. Cong. & Adm. News 2112, 2119–2120. Nor do we believe that the fact that petitioners' connection with the "organized crime" frame of reference may turn out to be only because of a family or business relationship is sufficient to justify a contrary conclusion. Cf. *United States* v. *Kahn*, 415 U.S. 143 (1974). Clearly, the circumstances herein cannot be equated with the horrendous attempt to infer guilt by association in violation of a taxpayer's first amendment right of free speech which existed in *Lenske* v. *United States*, 383 F. 2d 20 (C.A. 9, 1967), heavily relied upon by petitioners. Likewise, we do not believe that the selective process which may have been utilized herein meets the standard of "harassment" or "pressure" suggested, without any delineation, in *United States* v. *Powell*, 379 U.S. 48, 59 (1964). In short, we do not believe that petitioners' allegations, even if true, would be violative of the applicable requirements of due process. See

*Shapiro* v. *Thompson, supra.* See also *Bob Jones University* v. *Simon, supra.*

The foregoing reasoning also disposes of petitioners' attempt to attack the validity of the second examinations under section 7605(b). In a prior proceeding, petitioners unsuccessfully attacked the summons issued in connection with such examinations. See *United States* v. *Gambino,* an unreported case (S.D. N.Y. 1971, 29 A.F.T.R. 2d 72–1010, 72–1 U.S.T.C. par. 9439). Most, if not all, of the arguments made herein were considered and rejected by Judge Ryan in that proceeding. Assuming without deciding that the prior proceeding does not justify the application of collateral estoppel, we nevertheless reach the same conclusion independently. Cf. *United States* v. *DeLuca,* an unreported case (E.D.N.Y. 1972, 30 A.F.T.R. 2d 72–5771, 72–2 U.S.T.C. par. 9738), affd. 474 F. 2d 1336 (C.A. 2, 1973). Compare *Arthur Meister,* 60 T.C. 286, 294 (1973), on appeal (C.A. 3, Aug. 21, 1973). In so doing, we note that the procedural requirements of section 7605(b) and therefore the underlying purpose of the section were satisfied. See *United States* v. *Powell,* 379 U.S. at 54–56. We are also satisfied that the circumstances alleged herein do not constitute unconstitutional action on the part of the respondent which would justify, at least at this stage of the proceeding, shifting to respondent the burden of proof or of going forward with the evidence as we did in *Efrain T. Suarez, supra.* Nor do the allegations of blanket disallowances of deductions and/or increases of round dollar amounts of taxable income, in the case of the corporate petitioners, dictate any such action. To be sure, the evidence presented at the trial may be such that the Court will be required to determine the extent of petitioners' tax liabilities, if any, on the basis of the record before it and not merely on the basis that petitioners have failed to sustain their burden of proof. *Helvering* v. *Taylor,* 293 U.S. 507 (1935); *Marx* v. *Commissioner, supra; Durkee* v. *Commissioner,* 162 F. 2d 184, 187 (C.A. 6, 1947), remanding 6 T.C. 773 (1946). Compare *Human Engineering Institute,* 61 T.C. at 66. But whether this situation will obtain will have to abide the event.

We conclude that petitioners' motion should be denied and that these cases should proceed to trial in due course.

*An appropriate order will be entered.*