617 F.2d 14
 80-1 USTC P 9265
 John and Norma OGIONY, John J. and Gloria Nasca, Joseph M.
and Nancy Nasca, Edward L. and Ruth M. Ogiony,
Peter Santin and Enis Santin,
Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 Nos. 504-508, Dockets 79-4147, 79-4149, 79-4151, 79-4153, 79-4155.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 10, 1979.
Decided Feb. 22, 1980.
 
 Ralph J. Gregg, Buffalo, N.Y. (George M. Zimmermann, Philip John Szabla, Albrecht, Maguire, Heffern & Gregg, P. C., Buffalo, N.Y., of counsel), for petitioners-appellants.
 Robert T. Duffy, Washington, D.C. (M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Jay W. Miller, Tax Div., Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.
 Before MULLIGAN, OAKES and GURFEIN,* Circuit Judges.
 MULLIGAN, Circuit Judge:
 
 
 1
 This is an appeal from a decision of the Tax Court, Cynthia Hall, Judge, 38 T.C.M. 358 (1979). The facts, most of which were stipulated by the parties, are set forth in detail in Judge Hall's opinion. For the purposes of this appeal, they may be summarized as follows.
 
 
 2
 Appellants[1] or their wholly-owned corporations formed two partnerships, P. Santin, J. & E. Ogiony, A. Stangl Joint Venture in 1966 ("Garden Partnership") and Losson Gardens Company in 1969, for the purpose of building rental apartments on certain pieces of underdeveloped real estate in Cheektowaga, New York. They were unable to obtain financing for the projects because the market interest rate at that time for nonresidential mortgage financing exceeded the maximum chargeable to individual borrowers under the usury laws of New York.[2] Corporations however, may not interpose a defense of usury in New York. N.Y.Gen.Obligations Law § 5-521 (McKinney 1978). Therefore, appellants utilized two corporations, Garden Village Builders, Inc. ("Garden Corporation") and Losson Gardens, Inc. ("Losson Corporation"),[3] as corporate signatories in order to obtain the commercial loans necessary to develop the apartment projects.
 
 
 3
 The partnerships transferred title to the parcels of land they intended to develop to the corporations, which then became the mortgagors of record. For most of the time throughout the financing period, the corporations retained title to those parcels. However, the corporations' shareholders intended that the corporations should be merely financing vehicles. Accordingly, the corporations transferred all draws on the mortgage loans, either by check or endorsement, to the partnerships. Moreover, the partnerships received all rental income from and paid all expenses incurred in the construction and operation of the apartment projects.
 
 
 4
 On their individual federal tax returns, the partners claimed their distributive shares of the net operating losses reported by the partnerships on their information returns. These were disallowed by appellee, the Commissioner of Internal Revenue ("Commissioner"), on the ground that the losses could only be claimed by the corporations.
 
 
 5
 The Tax Court below held that neither Garden Corporation nor Losson Corporation could be disregarded for federal tax purposes. Noting that the instant case is virtually indistinguishable from Strong v. Commissioner, 66 T.C. 12, aff'd on the opinion below, 553 F.2d 94 (2d Cir. 1977), Judge Hall ruled that the individual partners were not entitled to deduct their distributive shares of the net operating losses incurred with respect to the apartment complexes. We agree and reaffirm the holding of the Tax Court in Strong that "income from property must be taxed to the corporate owner, and will not be attributed to the shareholders, unless the corporation is a purely passive dummy or is used for a tax-avoidance purpose." 66 T.C. at 22. Neither exception to the rule in Strong exist here. Strong v. Comm'r, supra, at 22-25; see Moline Properties, Inc. v. Comm'r, 319 U.S. 436, 63 S.Ct. 1132, 87 L.Ed. 1499 (1943).
 
 
 6
 Appellants also argue that the Commissioner's denial of their claimed deductions is an arbitrary and capricious application of Section 482 of the 1954 Internal Revenue Code. Section 482 provides inter alia that the Commissioner may apportion deductions between organizations owned or controlled directly or indirectly by the same interests in order to clearly reflect the income of such businesses.[4] Appellants argued that since the partnerships were the taxable entities which financed and built the apartment projects, the individual partners should be entitled to deduct their allocable shares of the operating losses.
 
 
 7
 This contention has no merit since the record is clear that the Commissioner did not invoke section 482 in denying appellants' deductions. The statutory notices do not mention the statute. Rather, the Commissioner relied on the principle that the corporations, as owners of the property, were the proper parties to claim the deductions. We agree with the Tax Court that there is no reason in this case to depart from the general rule that courts will not look behind the statutory notice in order to ascertain which provisions the Commissioner relied upon in making his determination. Branerton Corp. v. Comm'r, 64 T.C. 191, 200 (1975); Greenberg's Express, Inc. v. Comm'r, 62 T.C. 324, 327 (1974). We are fortified in this conclusion by the responses of the Commissioner to interrogatories in which he repeatedly denied this his determination had been based on section 482.
 
 
 8
 The Tax Court allowed the individual partners certain deductions for business expenses which were solely attributable to property owned by the partnerships. Appellee points out that the Tax Court made a mathematical error in calculating Garden Partnership's share of the interest on the purchase obligation paid in 1967 to Sereth Properties, Inc., the seller of the real estate on which the partnership's apartment complex was located. The appropriate deduction is $4,520.82, rather than $2,728.42, which the Tax Court computed.
 
 
 9
 We find appellants' remaining arguments to be without merit. Accordingly, the decisions of the Tax Court are affirmed in all parts except the case is remanded to the Tax Court so that it may amend its mathematical computation of deductions allowed to appellants in accordance with this opinion.
 
 OAKES, Circuit Judge (concurring):
 
 10
 I concur in Judge Mulligan's opinion. The record does not support appellant's contention that the Commissioner in his discretion invoked Section 482 in denying the deductions.[1] Neither the Commissioner's 30-day letter nor his 90-day letter (statutory Notice of Deficiency) cited any specific provisions of the Code, let alone Section 482. The Commissioner apparently based his decision on the principle that the corporations, as owners of the property, were the proper parties to claim the deductions; his response to interrogatories repeatedly denied a Section 482 allocation and claimed reliance instead on Sections 11, 61, and 63.
 
 
 11
 Appellants, however, make two troubling points that raise questions about the Commissioner's consistency over time and uniformity of treatment among taxpayers. First, a District Director of the IRS explicitly made a Section 482 allocation between the corporations and partnerships, but for subsequent tax years not at issue here. Second, appellants allege that the Commissioner issued at least one private ruling to another party, in a scenario similar to the instant one, allowing the partners, not the corporation, to deduct the losses. To be sure, the IRS states in the introduction to each issue of its Cumulative Bulletin that "(u)npublished rulings will not be relied on, used, or cited as precedents by service personnel in the disposition of other cases." Nevertheless, the Supreme Court, in Hanover Bank v. Commissioner, 369 U.S. 672, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962), viewed such rulings as having some precedential value:
 
 
 12
 (A)lthough the (taxpayers) are not entitled to rely upon unpublished private rulings which were not issued specifically to them, such rulings do reveal the interpretation put upon the statute by the agency charged with the responsibility of administering the revenue laws. And, because the Commissioner ruled, in letters addressed to taxpayers requesting them, that amortization with reference to a special call price was proper under the statute, we have further evidence that our construction of allowable bond premium amortization is compelled by the language of the statute.
 
 
 13
 Id. at 686-87, 82 S.Ct. at 1088-89 (footnotes omitted).
 
 
 14
 And there are indications that the IRS itself has relied on such private rulings to determine how to treat other similarly situated taxpayers. See K.C. Davis, Administrative Law of the Seventies § 17.07-5, at 417-18 (1976) (hereinafter cited as Davis) ("(U)npublished rulings are commonly relied upon by Service personnel in the disposition of other cases . . . . (T)he evolution of (these) practices and (these) pretenses has in fact produced what is in fact a gigantic fraud, for every issue of the Cumulative Bulletin states falsely that unpublished rulings are not relied on . . . .") (emphasis in original). It is my view that consistency over time and uniformity of treatment among taxpayers are proper benchmarks from which to judge IRS actions. See, e. g., Sirbo Holdings, Inc., v. Commissioner, 476 F.2d 981, 987 (2d Cir. 1973) ("(T) he Commissioner has a duty of consistency toward similarly situated taxpayers; he cannot properly concede capital gains treatment in one case and, without adequate explanation, dispute it in another having seemingly identical facts which is pending at the same time.") (citations omitted). See generally Davis §§ 17.07-1 to -8. But these appellants have not shown violations of either tenet sufficiently clearly to trigger real doubt as to the validity of the IRS actions here.
 
 
 
 *
 Judge Gurfein voted to affirm the judgment of the Tax Court at a voting conference on Friday, December 14, 1979, prior to his death on December 16, 1979. He did not have the opportunity, however, to see this opinion prior to his death
 
 
 [1]
 Appellants Norma Ogiony, Gloria Nasca, Nancy Nasca, Ruth M. Ogiony and Enis Santin are parties to this litigation solely because they filed joint returns with their husbands during the years at issue. Thus, we shall use the term "appellants" in setting forth the facts of this case to refer to John and Edward Ogiony, John and Joseph Nasca, and Peter Santin
 
 
 [2]
 General Obligations Law Section 5-501 applicable at that time limited the maximum interest rate chargeable to individual borrowers to 6 percent. In 1968, section 5-501 was amended to allow a maximum interest rate of 71/2 percent, and in 1973 a maximum rate of 8 percent
 
 
 [3]
 At the time of the financing, Garden Corporation was an inactive corporation which had previously been established by Peter Santin Construction Co., Inc., appellant Santin's closely held construction company, and Alfred Stangl, who is not a party to this litigation. Losson Corporation, on the other hand, was established for the specific purpose of avoiding New York's usury provisions
 
 
 [4]
 Section 482, as applicable during the years in question, provided as follows:
 In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Secretary or his delegate may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades or businesses.
 
 
 [1]
 Nor can the taxpayer compel the Commissioner to invoke Section 482: "Section 482 grants no right to a controlled taxpayer to apply its provisions at will, nor does it grant any right to compel the district director to apply such provisions." Treas.Reg. § 1.482-1(b)(3). The general thrust of the provision, then, is to provide the Commissioner with a sword, not to give taxpayers a shield. Appellants cite Rubin v. Commissioner, 429 F.2d 650 (2d Cir. 1970), to support their position that Section 482 should be applied, but the Commissioner in that case had apparently alternatively relied on Section 482 in finding deficiencies in the taxpayer's reported income, a factor not present here