152 T.C. No. 11

UNITED STATES TAX COURT

MARIA IVON MOYA, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13343-15.                    Filed April 17, 2019.

P assigned no error to R's adjustments underlying his determinations of deficiencies in P's income tax. Rather, P challenges R's determinations on the grounds that, in examining her tax returns, R violated certain rights accorded P by the Taxpayer Bill of Rights adopted by the IRS in 2014.

<u>Held</u>: P, having failed to assign error to R's adjustments or to present any evidence at trial with respect to the adjustments, is deemed to concede them.

<u>Held</u>, <u>further</u>, a proceeding to redetermine a deficiency in tax involves a trial de novo, and P has not persuaded us to deviate from the principle articulated in <u>Greenberg's Express, Inc. v. Commissioner</u>, 62 T.C. 324 (1974), and look behind the notice of deficiency.

<u>Held</u>, <u>further</u>, deficiencies in tax sustained.

Maria Ivon Moya, pro se.

Wesley J. Wong, Andrew J. Davis, Adam W. Dayton, and Thomas R. Mackinson, for respondent.


OPINION


HALPERN, Judge:  By notice of deficiency dated February 23, 2015 (notice), respondent determined deficiencies in petitioner's Federal income tax for her 2011, 2012, and 2013 taxable years (examination years) of $5,796, $8,707, and $12,329, respectively, and accuracy-related penalties for those years of $1,159, $1,741, and $2,466, respectively.  Respondent, however, now concedes (and we accept) that petitioner is not liable for the accuracy-related penalties.  The deficiencies in income tax that respondent determined result principally from his disallowance of deductions that petitioner claimed in connection with a Schedule C business of hers and from her failure for one year to include in gross income the taxable portion of her Social Security benefits.  Petitioner assigns no error to respondent's adjustments to her income.  Rather, she challenges respondent's determinations on the ground that, in conducting his examination of her returns, he deprived her of rights guaranteed to all taxpayers by the "Tax Payer's Bill of

Rights".  Respondent answers that petitioner is impermissibly looking behind the notice and prays that we deny her relief and sustain his determinations.  We agree with respondent and, except for the accuracy-related penalties, will do as he requests.

Unless otherwise stated, all section references are to the Internal Revenue Code of 1986, as amended and in force at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.  Petitioner bears the burden of proof.  See Rule 142(a).[1]

## Background

The parties have stipulated certain facts and the authenticity of certain documents.  The facts stipulated are so found, and documents stipulated are accepted as authentic.

Petitioner resided in Santa Cruz, California, when she filed the petition.

---

[1]Petitioner has not raised the applicability of sec. 7491(a), which shifts the burden of proof to the Commissioner in certain situations.  We conclude that, in any event, sec. 7491(a) does not apply here because petitioner has not produced any evidence that she has satisfied the preconditions for its application.

Trial of the Case

This case was called for trial on December 4, 2017, in Las Vegas, Nevada. The parties appeared and were heard. At the start of the trial, we reiterated for petitioner what we had told her during a telephone conference a week earlier, that respondent had determined deficiencies in her income tax for the examination years and it was her burden to prove error in those determinations. We explained to her that the notice described the adjustments respondent had made to her reported income, and we offered her the opportunity to call witnesses, to present documents, or to testify herself with respect to respondent's adjustments. She declined our offer. She called no witnesses and offered no documents other than those stipulated. She explained that she believed that the notice should not have been issued because her rights had been violated. The Court received as her testimony two exhibits that had been stipulated, one a time line related to respondent's examination of her returns and the other a statement of her position, that the notice was invalid because respondent had deprived her of rights accorded to her by the taxpayer bill of rights (TBOR).[2] Respondent called no witnesses and offered no documents other than those stipulated. At the conclusion of the trial,

_____

[2]We use the acronym "TBOR" to refer to the term "taxpayer bill of rights" generically and not to refer to any particular legislative or administrative enactment or pronouncement.

recognizing that there were likely no disputed issues of fact, we allowed the parties to file posttrial legal memoranda addressing petitioner's argument that the notice was invalid because of violations of the TBOR and respondent's response that our report in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974), foreclosed us from looking behind the notice to consider the objections to it raised by petitioner.

To decide this case, we rely on the pleadings, those facts stipulated or readily drawn from the stipulated documents, and the posttrial legal memoranda filed by the parties. The following are the material facts.

Petitioner's Returns

For each of the examination years, petitioner filed a Form 1040, U.S. Individual Income Tax Return. During those years, petitioner was a professor at the College of Southern Nevada. For each year, she reported wages received from the college. She also included with each return a Schedule C, Profit or Loss From Business, for a business she identified as "IAM Enterprises". On the 2011 and 2012 Schedules C, she described IAM Enterprises as being in the business of "Workforce Training/manual development/translation". On the 2013 Schedule C, she described its business as "Workforce Training/manual development/ translation/bilingual training advisement/consultation."

On the IAM Enterprises Schedules C, she reported expenses in excess of gross income, which resulted in net losses as follows.

| Tax year | Gross income | Total expenses | Schedule C net loss |
|---|---|---|---|
| 2011 | $5,021 | $32,022 | $27,001 |
| 2012 | 5,890 | 41,124 | 35,234 |
| 2013 | 5,944 | 36,888 | 30,944 |

Respondent's Examination and the Notice

Respondent began his examination for the years in 2012, beginning with an examination for 2011. Apparently, by early February 2014, respondent's examination was being conducted from his Las Vegas, Nevada, office. On February 18, 2014, petitioner wrote to "Wanda Jackson, Examining Officer", at the Las Vegas Internal Revenue Service (IRS) office, asking that the examination be transferred to Santa Cruz, California, where petitioner had moved. On March 14, 2014, petitioner again wrote Ms. Jackson, reiterating her request and stating that she had received no reply to her earlier letter. By letter dated July 2, 2014, respondent's Denver, Colorado, office informed petitioner that her "Form 1040" had been sent to respondent's Santa Cruz, California, office. On November 25, 2014, petitioner wrote to "Stanellen Larsen, Examining Officer", also at the Las Vegas IRS office, acknowledging a letter from Ms. Larsen dated November 17,

2014 (apparently scheduling a hearing in Las Vegas on November 25, 2014), and reiterating petitioner's request for a hearing in Santa Cruz. As stated, on February 23, 2015, respondent mailed petitioner the notice.

Almost all of the adjustments respondent made to petitioner's reported income for the examination years relate to his disallowance of deductions that she had claimed on the IAM Enterprises' Schedules C for items such as advertising, rent, office expense, and utilities. In the notice, respondent explained those adjustments in common terms: "Since you did not establish that the business expense shown on your tax return was paid or incurred during the taxable year and that the expense was ordinary and necessary to your business, we have disallowed the amount shown." Respondent also increased petitioner's income for 2013 for taxable Social Security benefits that she had failed to report, and he determined penalties.

Petition

Petitioner timely filed the petition and avers the following reasons for disagreeing with the deficiencies in tax and penalties determined by respondent: Although she requested that the examination of her returns be set near her home, in Santa Cruz, it was set in Las Vegas; her phone calls to the IRS went unreturned; she received contradictory information as to where the examination of her returns

would take place; and she received inconsistent requests for information. Petitioner supports those claims with a two-page attachment to the petition entitled "Facts", which chronicles her various interactions with the IRS. Petitioner poses four questions in the body of the petition:

> Why did the Las Vegas IRS office continue to work my file when I was told by the Denver IRS office that my file had been transferred to California?
>
> Why did the Las Vegas IRS office continue to insist[] that I come to [an] examination meeting there when I was told I would have a meeting close to my home?
>
> Why did the Las Vegas IRS office file a deficiency when my file was transferred to California and before I had an examination meeting close to my home?
>
> Why was it that my queries received no response? I did not get one question answered, or one point clarified by the Las Vegas IRS office.

She adds that it is her understanding from the "Tax Payer's Bill of Rights" that she had the right to have her questions answered and the right to meet with an IRS representative at a time and place convenient to her, neither of which rights she was accorded.

Answer

Answering the petition, respondent neither admits or denies petitioner's substantive averments "on the ground that the allegations impermissibly attempt to

look behind the notice of deficiency in violation of the principle enunciated by the Tax Court in Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324 (1974)." He alleges that petitioner will have the opportunity to resolve this case with the IRS Office of Appeals. As stated, he prays that the relief petitioner seeks be denied and that his determinations in all respects be approved.

## Discussion

I.  Petitioner's Concession of Respondent's Adjustments

Rule 34(b) specifies the content of the petition in a deficiency case. In pertinent part, Rule 34(b)(4) requires a petitioner to make clear and concise assignments of each and every error that the petitioner alleges the Commissioner to have committed in the determination of the deficiency. The Rule cautions: "Any issue not raised in the assignments of error shall be deemed to be conceded." Rule 41(b)(1) provides, however: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Because petitioner failed to assign error to respondent's adjustments disallowing her Schedule C deductions or including in her 2013 gross income Social Security benefits, and because petitioner refused our entreaties to raise those issues a trial, we treat petitioner as

having conceded that there were no errors in those adjustments.[3]  See <u>Raifman v. Commissioner</u>, T.C. Memo. 2018-101, at *3 n.3.  However, we must still consider her TBOR-based challenge to the notice.

## II.    Petitioner's TBOR-Based Challenge to the Notice

### A.    Petitioner's Arguments

Petitioner's premises are straightforward.  There are no deficiencies in tax for any of the examination years because the notice was unlawfully issued.  The notice was unlawfully issued because, in conducting his examination for the examination years, respondent deprived her of rights guaranteed to all taxpayers by the TBOR.

Petitioner refers us to a TBOR announced by the IRS on June 10, 2014 (IRS TBOR).  <u>See</u> I.R.S. News Release IR-2014-72, 2014 WL 2590817 (June 10, 2014).[4]  The news release states that the IRS TBOR will "provide * * * taxpayers with a better understanding of their rights", by taking "the multiple existing rights

---

[3]In any event, the parties have stipulated that petitioner received $18,084 in Social Security benefits during 2013.

[4]Petitioner makes no reference to sec. 7803(a)(3), which now requires the Commissioner to ensure that IRS employees are familiar with and act in accord with taxpayer rights afforded by other provisions of the Internal Revenue Code, including, specifically, the rights enumerated in the IRS TBOR.  As discussed <u>infra</u> section III, that requirement became effective after the notice was issued.

embedded in the tax code" and grouping them "into 10 broad categories," which will make them "more visible and easier for taxpayers to find" on the IRS website. Id.[5] Along with announcing its TBOR, the IRS updated its "Publication 1: Your Rights as a Taxpayer" (Rev. 12-2014) (Publication 1) to feature the IRS TBOR on page 1. See https://www.irs.gov/pub/irs-prior/p1--2014.pdf.

> For the first right--"The Right to Be Informed"--Publication 1 states:

> Taxpayers have the right to know what they need to do to comply with the tax laws. They are entitled to clear explanations of the laws and IRS procedures in all tax forms, instructions, publications, notices, and correspondence. They have the right to be informed of IRS decisions about their tax accounts and to receive clear explanations of the outcomes.

> Petitioner claims that she received from respondent "procedures, forms, and notices" with respect to which she requested, but never received, clarification. She also claims that, on several occasions, she requested, but never had, an in-person interview at respondent's Las Vegas office. Finally, she claims that she received misleading information with respect to the IRS office charged with examining her returns. In particular, she claims that, after having been told that

---

[5]The 10 rights are: (1) "the right to be informed", (2) "the right to quality service", (3) "the right to pay no more than the correct amount of tax", (4) "the right to challenge the IRS's position and be heard", (5) "the right to appeal an IRS decision in an independent forum", (6) "the right to finality", (7) "the right to privacy", (8) "the right to confidentiality", (9) "the right to retain representation", and (10) "the right to a fair and just tax system". (Capitalization removed.)

the examination would be transferred to Santa Cruz, she was not told that the examination had been refused by that office and had been returned to Las Vegas. Petitioner characterizes all of those events as violating her right to be informed.

For the fourth right--"The Right to Challenge the IRS's Position and Be Heard"--Publication 1 states:

> Taxpayers have the right to raise objections and provide additional documentation in response to formal IRS actions or proposed actions, to expect that the IRS will consider their timely objections and documentation promptly and fairly, and to receive a response if the IRS does not agree with their position.

In her posttrial legal memorandum, petitioner claims that, when she brought up the violation of her rights with respondent's attorneys during preparation for trial, they dismissed her concerns. She claims that, for instance, Mr. Wong, respondent's trial counsel, told her "'mistakes[] were made, yes mistakes were made'" but that, "even though mistakes had been made * * * the court would not deal with that."

For the 10th right--"The Right to a Fair and Just Tax System"--Publication 1 states:

> Taxpayers have the right to expect the tax system to consider facts and circumstances that might affect their underlying liabilities, ability to pay, or ability to provide information timely. Taxpayers have the right to receive assistance from the Taxpayer Advocate Service if they are experiencing financial difficulty or if the IRS has not

resolved their tax issues properly and timely through its normal channels.

In her posttrial legal memorandum, petitioner refers to her request in February 2015, after her receipt of the notice, for assistance from the IRS Taxpayer Advocate Service (TAS). She claims that the TAS was unable to assist her because "there was absolutely nothing in my file. Nothing . . . no documents, no letters, no notices, no forms . . . nothing." Petitioner argues that the TAS failure to assist her violated her right to a fair and just tax system, as described in Publication 1.

With respect to taxpayer interviews, Publication 1 states: "If we notify you that we will conduct your examination through a personal interview, or you request such an interview, you have the right to ask that the examination take place at a reasonable time and place that is convenient for both you and the IRS." Petitioner claims that her rights were violated because she was not afforded an interview near her home in California before respondent issued the notice.

Petitioner concludes her posttrial legal memorandum by saying: "My rights as a taxpayer were violated on several counts by the IRS. * * * Title 26 of the U.S. Code (Tax Code) contains the protection of taxpayer rights including the right to have a fair hearing on the violation of those rights."

B.    Respondent's Arguments

Respondent also makes straightforward arguments.  Section 6212 authorizes the Secretary when he determines that there is a deficiency in respect to certain taxes, including the income tax, to send a notice of deficiency to the taxpayer. Upon a petition timely filed, the Tax Court has jurisdiction to redetermine the correct amount of the deficiency.  See sec. 6214(a).  Because a proceeding before the Tax Court to redetermine a deficiency is a proceeding de novo, the Tax Court generally will not look behind a notice of deficiency to examine the Commissioner's policy or procedure involved in making his determinations.  See Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 327; Smith v. Commissioner, T.C. Memo. 2018-170, at *20.  In Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 328, the Tax Court explained that, because a trial before the Court is a proceeding de novo, the Court's "determination as to a petitioner's tax liability must be based on the merits of the case and not any previous record developed at the administrative level."  The principle articulated in Greenberg's Express--that the Court will not generally look behind a notice of deficiency--has been repeatedly upheld by courts, including the U.S. Court of Appeals for the Ninth Circuit.  See Pasternak v. Commissioner, 990 F.2d 893, 898 (6th Cir. 1993), aff'g T.C. Memo. 1991-181; Ogiony v. Commissioner, 617 F.2d 14, 16-17 (2d Cir.

1980), aff'g and remanding T.C. Memo. 1979-32; Doyal v. Commissioner, 616 F.2d 1191, 1192 n.3 (10th Cir. 1980), aff'g T.C. Memo. 1978-307; Crowther v. Commissioner, 269 F.2d 292, 293 (9th Cir. 1959), aff'g on this issue 28 T.C. 1293 (1957).

Respondent acknowledges that we have considered the administrative handling of a case when there is substantial evidence of unconstitutional conduct by respondent. In Suarez v. Commissioner, 58 T.C. 792, 813-814 (1972), for instance, where the deficiency notice was based exclusively on evidence obtained in violation of the Fourth Amendment and, in order to provide a deterrent to such unconstitutional action on the part of the Government, we excluded the "tainted" evidence and imposed the burden of going forward with the evidence on the Commissioner. Nevertheless, respondent points out, although unconstitutional conduct is an exception to the principle that we will not look behind the notice of deficiency, we have not declared a notice of deficiency void as a sanction for such conduct. See, e.g., Riland v. Commissioner, 79 T.C. 185, 207 (1982); Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 328; Suarez v. Commissioner, 58 T.C. at 814; Cristo v. Commissioner, T.C. Memo. 2017-239, at *7 n.7.

Near the conclusion of the trial in this case, the Court asked the parties whether there is any caselaw addressing the application of the Greenberg's Express

principle to rights enunciated in the TBOR. Respondent answers that, although there is no caselaw specifically addressing the issue, the TBOR does not embody constitutional rights, and consequently a violation of the TBOR does not provide an exception to the principle expressed in Greenberg's Express.

Respondent sums up his argument as follows (citations of the record omitted):

> In this case, petitioner had a trial de novo before the Court on December 4, 2017. Despite the Court's recommendation that she address the underlying deficiencies, petitioner repeatedly declined to introduce any evidence to substantiate the disallowed Schedule C deductions or with respect to the taxability of her unreported Social Security benefits. Instead of introducing evidence relevant to the issues in this case, petitioner continued to rely upon her argument that the Court should look behind the notice of deficiency and find that the underlying notice of deficiency was void because of process by which the IRS made its determination. Under Greenberg's Express, petitioner's argument is not pertinent to the issues in this case and should be disregarded by the Court.

C.      Discussion

1.      Introduction

Neither party has presented us with a rigorous argument either way as to whether the IRS TBOR accorded petitioner rights the violation of which would give us reason to ignore the principle articulated in Greenberg's Express and look behind the notice in order to remediate any violation. Petitioner has made no

argument at all. Respondent's argument that rights found in the IRS TBOR are not constitutional rights is perfunctory. Nevertheless, on our own examination of the question, we conclude that, even if we were to credit petitioner's claims that, in examining her returns, respondent violated her rights to be informed, to challenge the IRS position and be heard, and to a fair and just tax system (all rights found in the IRS TBOR) and, also, that he failed to afford her an interview near her home in California before he issued the notice, we would neither invalidate the notice, relieve petitioner of any portion of the burden of proof, nor take any other action to remediate those violations or failure. The simple reasons are that (1) the IRS TBOR did not add to petitioner's rights and (2) even if everything she says is true, respondent's missteps that petitioner complains of would not in this de novo proceeding cause us to either lift or lighten her burden of proving error in respondent's determinations of deficiencies in her tax. See Greenberg's Express, Inc. v. Commissioner, 62 T.C. at 327-328. Our analysis follows.

2.    The IRS TBOR Did Not Create or Confer Rights Not
      Otherwise Provided For in the Internal Revenue Code

a.    Introduction

We think that the history of the IRS TBOR makes clear that it accords

taxpayers no rights they did not already possess.[6]

b.    The National Taxpayer Advocate's 2007
      Recommendation That Congress Enact a Statutory
      TBOR

The National Taxpayer Advocate (NTA), Nina E. Olson, is the voice of the

taxpayer within the IRS and before Congress.  See TAS, About TAS, Our

Leadership, https://taxpayeradvocate.irs.gov/about/our-leadership.  The NTA

reports annually to Congress.  See sec. 7803(c)(2)(B)(ii); TAS, Reports to

Congress, https://taxpayeradvocate.irs.gov/reports.  In her 2007 annual report, Ms.

Olson recommended that Congress enact a statutory bill of taxpayer rights and

obligations articulating the social contract between the Government and its

taxpayers--"taxpayers agree to report and pay the taxes they owe and the

government agrees to provide the service and oversight to ensure that taxpayers

---

[6]We must give credit to the U.S. District Court for the Northern District of California for discussing the history of the IRS TBOR in Facebook, Inc. v. IRS, Case No. 17-cv-06490-LB (N.D. Cal. May 14, 2018), 2018 WL 2215743, at *3-*9.  We cite the source documents constituting that history without further, particular citation of the order of the District Court.

can and will do so."  <u>See</u> TAS, NTA 2007 Annual Report to Congress 478 (2007)

(NTA 2007 report), available at https://www.irs.gov/advocate/national-

taxpayer-advocates-2007-annual-report-to-congress.  She envisioned the

enactment not as establishing new rights and obligations but as articulating "rights

and obligations * * * generally derived from provisions that

* * * [were] already part of the tax laws or procedures."  <u>Id.</u>  She explained:

> The Internal Revenue Code does not currently contain a concise and explicit list of taxpayer rights and obligations.  * * *
>
>       *       *       *       *       *       *       *
>
> While the Internal Revenue Code contains significant rights, protections, and expectations of taxpayers, these provisions are scattered throughout the Code and the IRM.  They are not easily accessible to taxpayers, nor are they written in language that is readily understandable by many taxpayers.
>
>       *       *       *       *       *       *       *
>
> The National Taxpayer Advocate believes that taxpayers will be reassured in the essential fairness of the tax system and more disposed to voluntarily comply with the tax laws if they can see and understand a clear declaration of their rights as taxpayers.  As taxpayers understand that specific statutory protections flow from these rights, they will be able to better avail themselves of these protections.  IRS employees, in turn, will better understand why these specific protections exist.  Moreover, a clear linkage between taxpayer rights and responsibilities will establish expectations of taxpayer behavior that are easily understandable and fulfilled.

Establishing a statutory Taxpayer Bill of Rights will reassure taxpayers that the tax system is essentially fair and just, and inform taxpayers of the treatment they can expect from their government as well as of the behavior the government expects of them. Revising Publication 1 so that it sets forth the Taxpayer Bill of Rights in its entirety and then relates specific statutory protections and obligations to those rights will enable taxpayers to avail themselves of those rights and conform their behavior accordingly.

Id. at 481, 485.

Ms. Olson recommended a bill of 10 taxpayer rights: (1) "the right to be informed," (2) "the right to be assisted," (3) "the right to be heard," (4) "the right to pay no more than the correct amount of tax," (5) "the right of appeal," (6) "the right to certainty," (7) "the right to privacy," (8) "the right to confidentiality," (9) "the right to representation," and (10) "the right to a fair and just tax system." Id. at 486-488 (capitalization removed).[7]

          c.      Legislative Proposals for a TBOR Between 2009 and 2013

Between 2009 and 2013 several members of Congress, notably Representative Xavier Becerra and Senator Jeff Bingaman, proposed legislation that would require the Department of the Treasury in consultation with the NTA to

---

[7]Her bill of taxpayer rights would have included five taxpayer obligations: "to be honest", "to be cooperative", "to provide accurate information and documents on time", "to keep records", and "to pay taxes on time". NTA 2007 report at 488-489.

publish a TBOR along the lines proposed by Ms. Olson.  H.R. 5716, 110th Cong.,

sec. 2 (2008); H.R. 5047, 111th Cong., sec. 101 (2010); S. 3215, 111th Cong., sec.

101 (2010); H.R. 6050, 112th Cong., sec. 101 (2012); S. 3355, 112th Cong., sec.

101 (2012).  Each of those bills stated that the proposed TBOR would "not create

or confer any rights or obligations not otherwise provided for under this title" (i.e.,

title 26, the Internal Revenue Code).  See, e.g., H.R. 5716, sec. 2.  Instead, the

purpose of the proposed TBOR legislation was to provide taxpayers with an easy-

to-understand list of the rights and obligations established in other sections of the

Internal Revenue Code.  See 156 Cong. Rec. E559 (daily ed. Apr. 15, 2010)

(statement by Rep. Becerra) ("[T]his legislation would require Treasury to publish

an easy-to-understand Taxpayer Bill of Rights that would enumerate all taxpayers'

rights and obligations, as well as their location in the tax code.  Currently, these

rights and obligations are scattered throughout the tax code and Internal Revenue

Manual, making them neither accessible nor written in plain language that most

taxpayers can understand.").  None of those bills was enacted.

In 2013, Representative Peter Roskam introduced new proposed TBOR

legislation.  See H.R. 2768, 113 Cong., sec. 2 (2013).  Whereas the prior bills had

required the Department of the Treasury to publish a TBOR, Representative

Roskam's version proposed amending the Internal Revenue Code "to clarify that a

duty of the Commissioner of Internal Revenue is to ensure that Internal Revenue Service employees are familiar with and act in accord with certain taxpayer rights." Id. Representative Roskam acknowledged that the 10 rights in his bill were all preexisting rights under then-current law but stated that he was introducing this proposed legislation to establish unambiguously the Commissioner's duty as described. 159 Cong. Rec. H5211 (daily ed. July 31, 2013). Representative Roskam's bill passed the House and was transmitted to the Senate with the explanation that it was a bill "to clarify that a duty of the Commissioner of Internal Revenue is to ensure that Internal Revenue Service employees are familiar with and act in accord with certain taxpayer rights." 159 Cong. Rec. S6198 (daily ed. Aug. 1, 2013). The bill was not enacted.

d.     The NTA's 2013 Recommendations That the IRS Adopt a TBOR

In November 2013, Ms. Olson issued a report entitled "Toward a More Perfect Tax System: A Taxpayer Bill of Rights as a Framework for Effective Tax Administration" (2013 NTA report), available at http://taxpayeradvocate.irs. gov/2013-Annual-Report/downloads/Toward-a-More-Perfect-Tax-System-A-Taxpayer-Bill-of-Rights-as-a-Framework-for-Effective-Tax-Administration.pdf. Recognizing that formally codifying a TBOR would require congressional action

(theretofore unobtainable), the 2013 NTA report recommends to the Commissioner that he adopt a bill of 10 fundamental taxpayer rights and 5 taxpayer responsibilities. Id. at 5-6, 12. The 10 rights--similar to the rights included in Ms. Olson's 2007 recommendation that Congress enact a TBOR--were as follows: (1) "the right to be informed," (2) "the right to quality service," (3) "the right to pay no more than the correct amount of tax," (4) "the right to challenge the IRS position and be heard," (5) "the right to appeal an IRS decision in an independent forum," (6) "the right to finality," (7) "the right to privacy," (8) "the right to confidentiality," (9) "the right to retain representation," and (10) "the right to a fair and just tax system, including access to the Taxpayer Advocate Service." Id. at 2-3 (capitalization removed). Ms. Olson provided a compendium of the statutory and other sources of the 10 articulated rights. See id., App. C., at 52-55.

The 2013 NTA report states that its recommended TBOR "does not aim to create new rights or remedies, only to group existing rights into categories that are easier for taxpayers and IRS employees to understand and remember. * * * Thus, a TBOR does not create new rights, but provides organizing principles--a framework--for statutory rights." Id. at 4, 6 (emphasis added).

In her December 2013 Annual Report to Congress, Ms. Olson largely repeats her recommendations from the 2013 NTA report that the Commissioner and the IRS adopt a TBOR. NTA 2013 Annual Report to Congress 5-19 (2013), available at https://taxpayeradvocate.irs.gov/2013-Annual-Report/downloads/Volume-1.pdf.

e.      The IRS 2014 Adoption of a TBOR

As reported supra, on June 10, 2014, the IRS announced its adoption of the IRS TBOR. The 10 fundamental rights enumerated in I.R.S. News Release IR-2014-72 are almost identical to the rights enumerated in the 2013 NTA report (omitting only from the 10th right, "the right to a fair and just tax system", the final words:  "including access to the Taxpayer Advocate Service"). The news release describes the TBOR as encompassing "multiple existing rights embedded in the tax code" and quotes IRS Commissioner John A. Koskinen as saying: "While these rights have always been there for taxpayers, we think the time is right to highlight and showcase these rights for people to plainly see." IR-2014-72, 2014 WL 2590817.

f.      Conclusion

We think there is ample evidence in the history recited to conclude that, in adopting a TBOR in 2014, the Commissioner had no more in mind than

consolidating and articulating in 10 easily understood expressions rights enjoyed by taxpayers and found in the Internal Revenue Code and in other IRS guidance. Certainly, the Commissioner had no power to legislate any new rights. Cf. Gamman v. Commissioner, 46 T.C. 1, 6 (1966) ("[T]he power of the Commissioner to prescribe regulations for the administration of the Federal tax laws is not the power to make law[.]"). By the Commissioner's own statement, "these rights have always been there for taxpayers". IR-2014-72, 2014 WL 2590817. Moreover, Ms. Olson could not have been more clear in the 2013 NTA report that, Congress having failed to enact a statutory TBOR, the Commissioner should adopt a TBOR "because it does not aim to create new rights or remedies". 2013 NTA report, at 4. Likewise, the various legislative proposals made between 2009 and 2013 for the Secretary in consultation with the NTA to publish a TBOR along the lines proposed by the NTA were clear in stating that the proposed legislation would not create or confer rights not otherwise provided for in the Internal Revenue Code. See supra sec. II.C.2.c. Similarly, Representative Roskam, in proposing legislation imposing a duty on the Commissioner to ensure that his employees were familiar with and acted in accordance with preexisting taxpayer rights, did not contemplate creating any new taxpayer rights. See id.

We conclude that, in adopting its TBOR in 2014, the IRS did not create for taxpayers any rights or remedies that they did not theretofore enjoy.

### 3. Respondent's Conduct of the Examination

Notwithstanding that the IRS TBOR created no new rights, we still must consider whether the missteps that petitioner describes respondent as having made in the examination of her returns give us cause to deviate from the principle expressed in Greenberg's Express that generally we do not look behind a notice of deficiency. Principally, petitioner complains that respondent deprived her of the opportunity adequately, if at all, to present her case before he issued the notice and that, in particular, he deprived her of an interview near her home in California.[8]

In Human Eng'g Inst. v. Commissioner, 61 T.C. 61, 62 (1973), the taxpayers complained that jeopardy assessments and deficiency notices were the result of the Commissioner's arbitrary and capricious action in failing to give them adequate notice and a hearing and in failing to conduct a proper investigation of the basis for asserting the tax claimed to be due. We answered: "[I]t is * * * well

---

[8]Petitioner describes for the first time in her posttrial legal memorandum her unsatisfactory interaction with respondent's counsel during preparation of this case for trial and of her inability to get help from TAS. Generally, we do not consider facts stated for the first time on brief and not stipulated. Tolins v. Commissioner, T.C. Memo. 1963-34, T.C.M. (P-H) para. 63,034, at 63-158. Here, however, even were we to credit petitioner's claims, we would not reach a different result.

established that the courts will generally not look behind such a notice to determine whether respondent's agents followed the established administrative procedures in respect of investigation and according the petitioners a hearing." Id. at 66; see also, e.g., Riland v. Commissioner, 79 T.C. at 200-201 (rejecting the claim that the IRS, as an agency, is bound by the procedures it adopts and its failure to follow its own procedures, as set out in the Internal Revenue Manual, is a per se violation of due process).

Both Human Eng'g Inst. and Riland concern claims that the IRS did not follow its own administrative procedures, while petitioner's complaint is not that the IRS failed to follow its own administrative procedures but that, in examining her returns, it "violated * * * rights" for "the protection of taxpayer[s]" contained in the "Tax Code".

Except in extraordinary circumstances not here pertinent, taxpayers have the statutory right to a hearing in this Court before the Secretary may assess a deficiency in income tax. See sec. 6213(a). Section 6214(a) establishes our jurisdiction to redetermine (i.e., determine de novo) deficiencies determined by the Secretary. In general, the taxpayer bears the burden of proving error in the Secretary's determinations. See Rule 142(a); see also Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioner points to no provision of the Internal Revenue

Code that would relieve her of that burden. Petitioner has used the opportunity that Congress gave her to show error in the Secretary's determinations not by showing error in the IRS adjustments to her income but by challenging the Secretary's right to make those determinations because of his alleged violations of her unspecified statutory rights. Whatever missteps respondent may have taken in examining petitioner's returns, he has not deprived her of the right to challenge his deficiency determinations before this Court. Petitioner has given us no ground to deviate from the principle expressed in Greenberg's Express and invalidate the notice or impose on respondent some sanction for his missteps. To the extent that, on account of his violation of rights guaranteed to petitioner under the IRS TBOR, respondent in the notice overstated the deficiencies in petitioner's tax, her remedy was not to be excused from liabilities imposed by the Internal Revenue Code but to take the opportunity afforded by the Code to prove the correct liabilities before this Court.

D. Conclusion

Petitioner's TBOR-based challenge to the notice fails, and she has not shown error in respondent's determinations of deficiencies in tax for the examination years. Accordingly, we will sustain those determinations.

III.     Postscript--Enactment of a Statutory TBOR

In February 2015, Representative Roskam reintroduced his proposed legislation to enact a statutory TBOR.  H.R. 1058, 114th Cong. (2015).  The bill was referred to the Committee on Ways and Means, which revised Representative Roskam's bill so that the 10 rights listed in the proposed statutory TBOR tracked the terms of the IRS TBOR.  Compare H.R. 1058, 114th Cong., sec. 2 (2015) with IR-2014-72, 2014 WL 2590817, at *1.  The Committee reported the reason that the proposed legislation was needed:

> The Committee has found examples of IRS employees showing disregard for the rights and protections afforded taxpayers under the Code, and that such disregard may be a result of lack of emphasis on the importance of such rights.  Any public perception that such disregard is common and not taken seriously by upper management at the IRS undermines trust in the integrity of the IRS.  The Committee believes that the public trust that the top management of the IRS is committed to ensuring such rights is imperative to good tax administration.  Although the IRS has recently published a Taxpayer Bill of Rights, such publication does not itself carry force of law or impose any obligations on the management or employees of the IRS.  Accordingly, codifying the requirement that the Commissioner assume responsibility to implement the bill of rights is warranted to ensure public trust.

H.R. Rept. No. 114-70, at 4 (2015), available at https://www.congress.gov/114/crpt/hrpt70/CRPT-114hrpt70.pdf.  The Committee reported that the proposed legislation "adds to the Commissioner's duties the requirement to ensure that

employees of the IRS are familiar with and act in accordance with taxpayer rights as afforded by other provisions of the Internal Revenue Code." Id. The House of Representatives passed the bill in April 2015 by voice vote and transmitted it to the Senate.[9]

H.R. 1058 was not enacted as a stand-alone law. But the TBOR section from H.R. 1058 was added--unchanged from the version that the House Ways and Means Committee reported on and that the House passed in April 2015 and transmitted to the Senate--to the Protecting Americans from Tax Hikes Act of 2015 (PATH Act), which the House added to the Senate's version of the Consolidated Appropriations Act, 2016. See H.R. 2029, div. Q, tit. IV, subtit. A, sec. 401, 114th Cong. (engrossed House amendment Dec. 18, 2015). The Consolidated Appropriations Act, 2016, which included the PATH Act and its TBOR, was enacted on December 18, 2015. Pub. L. No. 114-113, 129 Stat. 2242 (2015). PATH Act sec. 401(a), 129 Stat. at 3117, amended section 7803(a)(3) to impose on the Commissioner the duty to ensure that IRS employees are familiar with and act in accord with taxpayer rights afforded by other provisions of the Internal Revenue Code, including, specifically, the rights enumerated in the IRS

---

[9]Several other bills with similarly worded proposed TBORs also were introduced in 2015. See, e.g., S. 943, 114th Cong. (introduced Apr. 15, 2015); S. 951, 114th Cong. (introduced Apr. 15, 2015).

TBOR.[10]  The PATH Act amendments to section 7803(a)(3) took effect on

December 18, 2015.  See PATH Act sec. 401(b), 129 Stat. at 3117.

_____

[10]As amended by PATH Act sec. 401(a), 129 Stat. at 3117, sec. 7803(a)(3) now provides:

> (3) Execution of duties in accord with taxpayer rights.--In discharging his duties, the Commissioner shall ensure that employees of the Internal Revenue Service are familiar with and act in accord with taxpayer rights as afforded by other provisions of this title, including--
>
> > (A) the right to be informed,
>
> > (B) the right to quality service,
>
> > (C) the right to pay no more than the correct amount of tax,
>
> > (D) the right to challenge the position of the Internal Revenue Service and be heard,
>
> > (E) the right to appeal a decision of the Internal Revenue Service in an independent forum,
>
> > (F) the right to finality,
>
> > (G) the right to privacy,
>
> > (H) the right to confidentiality,
>
> > (I) the right to retain representation, and
>
> > (J) the right to a fair and just tax system.

Because the notice was issued on February 23, 2015, almost 10 months earlier, we need not today concern ourselves with either the statutory TBOR or the duties imposed on the Commissioner by amended section 7803(a)(3). Nevertheless, we note in passing the thorough discussion of those subjects by the U.S. District Court for the Northern District of California in Facebook, Inc. v. IRS, (Facebook), Case No. 17-cv-06490-LB (N.D. Cal. May 14, 2018), 2018 WL 2215743. Facebook involved a proceeding ancillary to a proceeding in this Court, Facebook, Inc. v. Commissioner, T.C. dkt. No. 21959-16 (filed Oct. 11, 2016) (a deficiency proceeding). Facebook brought the ancillary proceeding before the District Court seeking an order compelling the IRS attorneys litigating its case before the Tax Court to refer the case to the IRS Office of Appeals for alternative dispute resolution. Facebook argued that one of the rights in the statutory TBOR-- "the right to appeal a decision of the Internal Revenue Service in an independent forum", sec. 7803(a)(3)(E) (as amended)--gives it an enforceable right to take its case to IRS Appeals in lieu of litigating before the Tax Court. Facebook, 2018 WL 2215743, at *1. The District Court said no, broadly holding that the TBOR enacted as part of the PATH Act did not grant new enforceable rights. Id. at *13. The District Court's consideration may prove useful when, inevitably, we come to

consider the statutory TBOR and the duties imposed on the Commissioner by amended section 7803(a)(3).

Decision will be entered for respondent sustaining the deficiencies in tax.